UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH PIERRE,

                         **Plaintiff,**

                v.                                      1:12-CV-834
                                                           (FJS/CFH)

ANGIODYNAMICS, INC.,

                         **Defendant.**
_____

**APPEARANCES**                                       **OF COUNSEL**

**D'ORAZIO PETERSON LLP**            **SCOTT M. PETERSON, ESQ.**
125 High Rock Avenue                  **GIOVANNA A. D'ORAZIO, ESQ.**
Saratoga Springs, New York
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**    **MICHAEL D. BILLOK, ESQ.**
11 Washington Avenue
Albany, New York 12210
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Currently before the Court are Defendant AngioDynamics, Inc.'s motion to dismiss for failure to state a claim, *see* Dkt. No. 4, and Plaintiff Joseph Pierre's cross-motion for leave to amend the complaint, *see* Dkt. No. 9-4.[1]

---

[1] To avoid confusion, the Court's citations to specific page numbers reference the page numbers that the Court's electronic filing system automatically generates.

## II. BACKGROUND

A.     **Factual background**[2]

Defendant employed Plaintiff, an African-American male, from March 14, 2010, to July 28, 2011. *See* Dkt. No. 9-3 at ¶ 10. Until March 2011, Plaintiff served as a Research and Development Manager for the "Plastic Port project," a medical device research project. *See id.* at ¶¶ 9, 12. In this capacity, Plaintiff's job responsibilities included (1) general management and oversight of the project; (2) designing new or improved processes; (3) managing, hiring, and developing the engineering staff; (4) mentoring his staff in the proper performance of engineering functions; (5) reviewing and providing guidance on the technical feasibility of complex design concepts; and (6) managing product improvement communications between research and development and manufacturing locations. *See id.* at ¶ 15.

In March 2011, Defendant demoted Plaintiff allegedly because of a delay in the Plastic Port project's completion. *See id.* at ¶ 23. Defendant replaced Plaintiff with Tom Hogen, a Caucasian male who, according to Plaintiff, had only three years of medical device-related work experience and no program management or research and development experience. *See id.* at ¶ 22. Plaintiff, however, claims that he had seventeen years of experience. *See id.*

Although Defendant did not change Plaintiff's formal job title after his reassignment, Plaintiff alleges that that he no longer had any subordinates, managerial/supervisory duties, or decision-making authority. *See id.* at ¶ 16. Plaintiff claims that he became the functional equivalent of an associate engineer, which is allegedly "a significantly less prestigious and less senior position than a research and development manager." *See id.* at ¶ 20. In his new

---

[2] The Court has drawn the following facts from the allegations in the proposed amended complaint and has assumed their truth for purposes of Defendant's motion. *See* Dkt. No. 9-3.

2

assignment, he allegedly (1) performed standard engineering assignments; (2) wrote test protocols, reports, and engineering change orders; (3) investigated new sources for raw materials, parts, and processes; and (4) carried out tasks as a superior directed. *See id.* at ¶¶ 16, 18, 20.

In addition, Plaintiff sets forth that, although at least six other Caucasian program or project managers were behind in the completion of their projects, Defendant did not demote, reassign, or remove them from their projects. *See id.* at ¶ 24. According to Plaintiff, program or project managers are the equivalent of research and development mangers in terms of seniority and management responsibilities. *See id.* One such individual was Tim Powell, a project manager. *See id.* at ¶ 28. Plaintiff purports that he and Mr. Powell both reported to Jeff Willis and that they were working on different products under the same product portfolio and with the same type of market impact. *See id.*

Finally, Plaintiff alleges that "he was not permitted to attend a seminar allegedly because of inadequate funds but that a Caucasian employee was permitted to attend that seminar." *See id.* at ¶ 31.

In light of the foregoing, Plaintiff claims that he tendered his resignation effective July 28, 2011. *See id.* at ¶ 32.

**B.    Administrative proceedings and subsequent legal action**

Prior to resigning, Plaintiff dually filed a complaint with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant unlawfully discriminated against him because of his race.

*See* Dkt. No. 4-1 at 2.[3]  After investigating, the NYSDHR issued a Determination and Order After Investigation ("Determination") on January 6, 2012, finding "no probable cause" that Defendant discriminated against Plaintiff because of his race in violation of New York State Human Rights Law.  *See* Dkt. No. 4-2.  On February 22, 2012, the EEOC issued a Dismissal and Notice of Rights letter ("Notice of Rights"), adopting the NYSDHR's findings and informing Plaintiff that he had a right to sue in federal or state court.  *See* Dkt. No. 4-3 at 2.

On May 21, 2012, Plaintiff commenced the instant action, contending that Defendant unlawfully discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.  *See* Dkt. No. 1 at 3.   In response, Defendant filed this motion to dismiss, principally arguing that Plaintiff had failed to state a *prima facie* claim of race discrimination.  *See* Dkt. No. 4-1.

### III. DISCUSSION

**A.     Plaintiff's cross-motion to amend the complaint**

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "a party may amend its pleading only with the opposing party's written consent or the court's leave[,] . . . [but] [t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "A court should only deny leave to amend 'for such reasons as "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."'"  *Carter v. City of*

---

[3] The Court takes judicial notice of the NYSDHR's Determination and the EEOC's Notice of Rights that Defendant filed in support of its motion to dismiss.  *See Knox v. Cnty. of Ulster*, No. 1:11-CV-0112, 2013 U.S. Dist. LEXIS 9504, *35 (N.D.N.Y. Jan. 24, 2013) (finding that "because the [NYSDHR's Determination and the EEOC's Notice of Rights are] public record[s] of which the Court may take judicial notice, the Court may properly consider [them] when deciding Defendant['s] motion" (citation omitted)).  For purposes of this motion, however, the Court takes judicial notice of these documents for the sole purpose of establishing that Plaintiff exhausted his administrative remedies prior to filing this action.

4

*Syracuse Sch. Dist.*, No. 5:10-CV-690, 2012 U.S. Dist. LEXIS 36612, *7 (N.D.N.Y. Mar. 19, 2012) (quotation omitted).  "The party opposing the requested relief has the burden of establishing that the amendment would be futile or unduly prejudicial."  *Id.* (citation omitted).  "[T]he district court has discretion whether or not to grant leave to amend[.]"  *Shomo v. State of N.Y.*, 374 F. App'x 180, 182 (2d Cir. 2010) (quotation omitted).

Given the early stage of this litigation and the fact that neither bad faith nor undue prejudice can be shown, the Court grants Plaintiff leave to amend his complaint to add the proposed factual allegations.

**B.     Defendant's motion to dismiss**

    *1.  Standard of review*

"A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief."  *Lyman v. NYC OASAS*, No. 1:12-CV-530, 2013 U.S. Dist. LEXIS 25828, *7 (N.D.N.Y. Feb. 26, 2013) (citing *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007)).  In considering the legal sufficiency, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, the plaintiff need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'"  *Twombly*, 550 U.S. at 557 (quotation omitted).  Under this standard, the

pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id*. at 555 (citation omitted), and present "enough facts to state a claim to relief that is plausible on its face[,]" *id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).   Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quotation omitted).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id*. at 570.

"'The *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards.'"  *Salaam v. Syracuse Model Neighborhood Facility*, No. 5:11-cv-948, 2012 U.S. Dist. LEXIS 35092, *5 (N.D.N.Y. Mar. 15, 2012) (quotation omitted).  "Employment discrimination claims need not contain specific facts establishing a *prima facie* case of discrimination, *see Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 514-15, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); rather, an employment discrimination complaint 'must include only a short and plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests[.]'" *Id.* at *6 (quotation and other citation omitted)).

### 2.  *Race discrimination*
#### a.  *Legal standard*

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, courts analyze Title VII and 42 U.S.C. § 1981[4] employment discrimination claims under the burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 F. App'x 462, 464 (2d Cir. 2011). Under this framework, a plaintiff bears the initial burden of demonstrating a *prima facie* case of race discrimination. *Lyman*, 2013 U.S. Dist. LEXIS 25828, at *12 (quotation omitted). To plead a plausible claim of discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the position that he held or sought; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See id.* (citation omitted).

Here, the parties agree that Plaintiff meets the first two elements of his *prima facie* case; but dispute (1) whether he suffered an adverse employment action and (2) whether the circumstances surrounding any such action gave rise to an inference of discrimination. *See* Dkt. No. 4-1 at 6-7.

### b. Adverse employment action

"[A]n adverse employment action [is] a 'materially adverse change' in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quotation omitted)). To be materially adverse, "[t]he plaintiff must have suffered a significant change in the context of h[is] employment; everyday grievances, disappointments, and setbacks do not suffice." *Carter*, 2012 U.S. Dist. LEXIS 36612, at *30 (citation omitted).

---

[4] The burden-shifting scheme developed under Title VII "should apply to claims of racial discrimination under § 1981." *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat.

Examples of material adverse changes include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities[.]'" *Sanders*, 361 F.3d at 755 (quotation omitted).

Accepting Plaintiff's factual allegations as true, and drawing all reasonable inferences in his favor, the Court finds that Plaintiff has pled sufficient facts to establish an adverse employment action. *See* Dkt. No. 9-4 at 6; Dkt. No. 3 at ¶ 17. Although Plaintiff's title and salary never changed, Plaintiff alleges that he effectively became the equivalent of an associate engineer, which is a less senior position with fewer job responsibilities. *See* Dkt. No. 9-4 at 6-7; *see also De la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (finding an adverse employment action where the plaintiff alleged that his employer transferred him from an "elite" division, "which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth" even though his pay remained the same).

In addition, Plaintiff alleges facts suggesting that there was a materially significant diminishment in his job responsibilities. *See Smith v. St. Luke's Roosevelt Hosp.*, No. 08 Civ. 4710, 2009 U.S. Dist. LEXIS 69995, *84 (S.D.N.Y. Aug. 11, 2009) (stating that, "[a]lthough a mere alteration of job responsibilities does not constitute an adverse employment action, 'reassignment with significantly different responsibilities' can constitute an adverse employment action" (quotation omitted)). Specifically, as the Research and Development Manager for the Plastic Port project, Plaintiff's job duties included (1) general management and oversight of the project; (2) designing new or improved processes; (3) managing, hiring, and developing the engineering staff; (4) mentoring his staff in the proper performance of engineering functions; (5)

reviewing and providing guidance on the technical feasibility of complex design concepts; and (6) managing product improvement communications between research and development and manufacturing locations.  *See* Dkt. No. 9-3 at ¶ 15.  Conversely, after his reassignment, Plaintiff merely performed standard engineering functions, such as (1) writing test protocols, reports, and engineering change orders, (2) investigating new sources for raw materials, parts, and processes, and (3) carrying out tasks as directed by a superior.  *See id.* at ¶¶ 16, 18, 20.  He also plausibly alleges that Defendant reassigned his subordinates without consulting him, ceased discussing managerial decisions with him, and removed his supervisory duties.  *See* Dkt. No. 9-4 at 6.  Such drastic changes in the nature of Plaintiff's work are, at a minimum, "tantamount to a demotion." *Patrolmen's Benevolent Ass'n v. City of New York*, 74 F. Supp. 2d 321, 335 (S.D.N.Y. 1999) (stating that, "[t]he key inquiry regarding involuntary transfers is whether the transfer constitutes a 'negative employment action tantamount to a demotion'" (quotation omitted)); *cf. Smith*, 2009 U.S. Dist. LEXIS 69995, at *30 (stating that, in deciding a motion to dismiss, the court's role "'"is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof"'" (quotation and other citation omitted)).

Accordingly, the Court finds that Plaintiff has pled sufficient facts to demonstrate that his reassignment may have constituted an adverse employment action and denies Defendant's motion to dismiss on this ground.[5]

---

[5] Although unclear, Plaintiff appears to allege that Defendant denying him the funding to attend a training seminar also constitutes an adverse employment action.  *See* Dkt. No. 9-4 at 6.  To the extent that he does so, the Court dismisses such a claim.  Plaintiff alleges neither that the seminar was required for his position or a promotion, nor that not attending the seminar had any adverse impact upon the terms and conditions of his employment or compensation.  *See* Dkt. No. 9-3; *see also Miller v. City of Ithaca*, No. 3:10-cv-597, 2012 U.S. Dist. LEXIS 76567, *15 (N.D.N.Y. June 1, 2012) (stating that "'[d]enial of training can constitute an adverse employment

9

### c. *Inference of race discrimination*

"A plaintiff may raise an inference of discrimination for purposes of the *prima facie* case by 'showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group.'" *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 42 (2d Cir. 2012) (quotation omitted). A "plaintiff must show []he [i]s 'similarly situated in all material respects' to the individuals with whom []he seeks to compare [him]self." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (quoting *Shumay*, 118 F.3d at 64).

> What constitutes "all material respects" therefore varies somewhat from case to case and, . . ., must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. . . . In other words, there should be an "objectively identifiable basis for comparability." . . .

*Id.* at 40 (internal quotations omitted).

"[S]imilarly situated in all material respects does not mean all respects generally, but rather sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *Hernandez v. City of New York*, No. 11-CV-3521, 2013 U.S. Dist. LEXIS 31793, *12 (E.D.N.Y. Feb. 13, 2013) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)). "Examples of what constitutes a 'material respect' are holding the same positions of roughly the same rank, and being subject to the same performance review and disciplinary standards." *Id.* (citations omitted). Finally, "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham*, 230 F.3d 34 at 39 (citations omitted).

---

action where it "bear[s] on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation"'" (quotation omitted)). "The mere fact that Plaintiff would have liked to attend additional training courses standing alone is insufficient to constitute an adverse employment action." *Id.* at *16.

10

In this case, Plaintiff has sufficiently pled that Defendant replaced him with Tom Hogen, a Caucasian male who had only three years of medical device-related work experience and no program management or research and development experience. *See* Dkt. No. 9-3 at ¶ 22. Plaintiff, however, had seventeen years of experience. *See id.* Plaintiff's plausible allegation that Defendant replaced him with a Caucasian employee of less experience alone is enough to raise an inference of race discrimination. *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (stating that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis" (citations omitted)); *King v. U.S. Sec. Assocs. Inc.*, No. 11 Civ. 4457, 2012 U.S. Dist. LEXIS 133339, *18-*19 (S.D.N.Y. Aug. 22, 2012) (denying defendant's motion to dismiss because plaintiff's allegations that she was replaced in her new job after one day by someone of a different race who had no experience sufficed to state a claim for racially motivated demotion).

Additionally, Plaintiff claims that Defendant treated six of his Caucasian counterparts more favorably in that Defendant did not demote or reassign them due to delays in their projects. *See* Dkt. No. 9-4 at ¶ 24. Plaintiff, however, only identifies Tim Powell, a Caucasian project manager, as a comparator, arguing that he also reported to Jeff Willis and worked on a different product under the same product portfolio and with the same type of market impact as Plaintiff's product. *See id.* at ¶ 28. Plaintiff, however, neglects to identify, let alone provide any details, about the remaining five individuals who are purportedly similarly situated to him with respect to Defendant not reassigning or removing them because of delays in their projects. *See id.* at ¶¶ 24-29. The same goes for the Caucasian individual who Defendant allegedly permitted to attend the training seminar, yet denied Defendant the funding to attend. *See id.* at ¶ 31. Although

11

Plaintiff's case in this respect is quite thin, the Court nevertheless concludes that, at this stage of the proceedings, Plaintiff has sufficiently alleged facts to support a plausible inference of race discrimination. *See Broich*, 462 F. App'x at 43 (stating, "'[g]enerally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is "minimal"'" (quotation omitted)).

Accordingly, in construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly pled sufficient facts to raise an issue of fact as to whether an inference of discrimination exists and, therefore, denies Defendant's motion to dismiss.[6]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **DENIED**, and the Court further

**ORDERS** that Plaintiff's cross-motion for leave to amend his complaint is **GRANTED**; and the Court further

---

[6] In its reply papers, Defendant, for the first time, argues that the NYSDHR's no probable cause finding precludes Plaintiff's 42 U.S.C. § 1981 race discrimination claim under the doctrine of *res judicata*. *See* Dkt. No. 11 at 11. Since Plaintiff has not had an opportunity to respond, the Court declines to address this issue at this time. *See Thomas v. Roach*, 165 F.3d 137, 145-46 (2d Cir. 1999) (rejecting consideration of plaintiff's argument regarding liability because it was raised for the first time in his reply brief (citation omitted)); *Freund v. Societe Nationale des Chemins de Fer Francais*, 391 F. App'x 939, 941 (2d Cir. 2010) (stating that "'[w]e generally do not consider issues raised in a reply brief for the first time because if an appellant raises a new argument in a reply brief an appellee may not have an adequate opportunity to respond to it'" (quotation omitted)).

    **ORDERS** that Plaintiff shall file and serve his amended complaint within **ten (10) days** of the date of this Memorandum-Decision and Order, and the Court further

    **ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters.

**IT IS SO ORDERED**.

Dated: March 26, 2013
       Syracuse, New York

                                                            Frederick J. Scullin, Jr.
                                                            Senior United States District Court Judge